All right, Mr. Bryant. Thank you. Good morning. May it please the court. Title 14, section 88 c3 of the US Code does not provide for a criminal restitution penalty. We know this from the text, the structure, the history, and the purpose of the statute. Each of those considerations leads to the same conclusion that this provides for a civil cause of action on the part of the Coast Guard, but not statutory authorization for a criminal restitution penalty. First, the text of the statute. Congress used the phrase liable for all costs, which is not the language it typically uses for restitution. Most importantly, Congress did not use the word restitution, which would have been the easiest and clearest way to provide for a restitution penalty. Congress did not refer to the general restitution statutes, which would have been an additional way to do that, and it has done so in other... It suggested that they didn't use the word restitution because it would have plainly been too limiting. They didn't want simply a restitution of the search costs, but they wanted all costs to be covered, including litigation costs, or what have you. Two responses. One, there's nothing inconsistent with that desire and a civil cause of action. They can recover those costs in civil court, but the other concern is, if Congress wanted this to be restitution but still allow for a broader recovery than the restitution statutes would provide, it could have said so. It could have said, and is subject to restitution for all costs. It could have done that and still made very clear that this was a restitution penalty. The statute doesn't read like a civil statute. Normally, when I see that any individual who knowingly and willfully communicated a false distress call, when I see the words knowingly and willfully, I think of mens rea in a criminal statute. And then when you go down and you say, guilty of a class D felony, so it seems like a criminal statute with a civil carve-out, and the civil carve-out is that section B, which explicitly refers to a civil penalty. Well, we think certainly that there are criminal and civil aspects to this statute. We think that both C2 and C3 are civil provisions. We understand that, but what you were doing was relying on the plain language of the statute. But if you look at the language that you're relying on, libel for all costs, and you say it's exclusively in civil proceedings, but if you do a search, it comes up in some criminal statutes. So I don't know that your plain language argument goes very far. Well, certainly the word libel can refer to both, and we would have loved to have found a consistent congressional practice. So maybe you did the same search I did, and you didn't find anything that helped you. Well, but I don't find anything that hurts us either. And certainly that has to do with both due process concerns and this court's clear precedent require clear explicit statutory authorization for criminal penalties. Okay. So in 18 U.S.C., the criminal statute, we know that, 2291E, it talks about destruction of vessel or maritime facility, and it goes on to whoever knowingly and intentionally imparts, I'm trying to shorten it up, or conveys any threat to an act which would violate this chapter shall be fined under this title or imprisoned not more than 5 years or both, and is liable for all costs incurred as a result of such threat. So that sounds to me like very parallel language in a criminal statute. It's similar. It's not identical. Liable for all costs incurred. That phrase is identical. Right. The statute isn't structured exactly the same way. No, the statute isn't structured, but you start out with the plain language. Well, there are both concerns, and I'm happy to jump around, and we've cited that statute in our brief. It's going in your order. No, well, I'm— Your order was to plain language. Well, okay, and then structure was after that, but we— I don't know that the structure tells you one thing or the other. As Judge Wilkinson said, the first thing says you're guilty, at one, says you're guilty of a Class D felony. That's criminal, right? The second thing says that there's a civil penalty, and then the question is whether this subparagraph three that tells you liable for costs can be imposed in the criminal case, and we know there can be a criminal case because of one, or if it's confined to the civil case. And our position is that because of the way it's structured— Because it's after two, it must be civil. That's our position. And understand that, and then you said, look at the plain language. We've shown that that doesn't work for you, and you've also said, well, if Congress wanted this to be criminal, it would have said so. But of course, if it wanted three to be civil, it could have said so, just as it did in two, right? That's true as well. Yeah. But when there's doubt, that has to go to the defendant's favor. It has to be clear that it's criminal. And so we addressed the 2291 in our brief, and we recognize that there are similarities, but there are plenty of other situations in the code where the phrase liable for costs is civil. I mean, does this make sense to have—the whole purpose of the statute is to save the Coast Guard resources that it incurs as a result of false distress codes, and whether these false distress codes are pranks or whether they are deliberately designed to divert the attention of the Coast Guard so that other nefarious activities can take place. It was clear that Congress regarded it as very, very serious. And why would it—in a statute designed to save the government resources, why should we interpret it in a way that requires the government to expend additional resources in a separate civil action rather than wrapping up the matter in a single proceeding? Well, there's certainly nothing requiring the government to bring a criminal case if all it's concerned about is recovering the costs. It could choose to bring a civil action— Yeah, but if it wanted to do both, his question is, if they want to do both, why would we require the government to file a separate civil action? That's his question. Well— That doesn't seem to make any sense, does it? I don't think it is nonsensical. I think it does make— You think that makes perfect sense in a resource-saving, a resource-protecting statute to require government to take two actions to be able to punish somebody as much as they can be punished for some nefarious—very nefarious, not describing your client's conduct, but conduct. Does that make sense to you? I don't think it's a tremendous added burden to impose on the government. So it makes sense to you? I think it does. And when we consider the—I'm sorry. No, I'm sorry. It is, as you said, as Judge Shedd, in a phrase that I put down, which I thought was so good. This is a resource-saving statute. This would require the government to expand more resources, right? That they could then recover. Well, not recover the costs of the two actions. Well— No. Again, there has to be— That's the theory that the government—not like people say to you, because you're a federal public defender, your time is worth nothing. Or the United States Attorney, your time is worth something, right? Those are government resources. Well, I understand. I don't think it's too much to ask in this situation. And when we consider the overall purpose of restitution, the reason that Congress passed the two general restitution statutes, 3663 and 3663A, was because Congress had this concern that victims were not being made whole, and victims often don't have the resources, the representation, or perhaps the cost incentive to come into court by themselves and file civil actions to recover. I can almost guarantee you, when those general restitution statutes were passed, nobody in Congress had any idea about the language in this statute. Well— I say that with great love and respect, but I worked there for 10 years, and I can almost guarantee you they hadn't the slightest idea. Now, we as judges and lawyers, we sit around and piece all that together to make great sense. But that may be paying too great a compliment. Well, that— But let me ask you this. What's your end game? You won't—do you think there should be a separate suit brought against your client for these numbers? If the government desires to do that, yes. Secondly, do you think—so in other words, as your argument is, there should be a separate suit. Or do you believe there's certain costs that could be awarded here in a criminal action that would not be available in that separate suit? Is it the whole purpose of your argument? You just say this whole case is about you want the government to file a second action? Well, if they want to. But the real rub of this, and why this is really important, is that restitution, the criminal restitution penalty, carries the threat that if there's a willful failure to pay that, he can go to prison and prison up to—he can be resentenced for up to the maximum prison time. So it's not merely like a violation. Let me ask you. Do you know anybody that's ever been punished again for not making restitution? For willful failure to pay, that does happen. And you've seen that, where people actually claim against a criminal defendant who's been sentenced in federal court and claim there's a willful non-payment of restitution? That claim—that certainly does happen. And at a minute— You've seen that? I've never seen it. I can't cite a case to you immediately, but it does happen. And what also happens is that the defendants, as part of their supervised release, they have to have a job. And we've seen courts and probation officers say, well, if you don't have a job, maybe you're intentionally not trying to have a job. I don't know, but if you don't—no, no, no. Wait, wait, wait, wait, wait. It's been my experience that getting a job or seeking a job is part of the conditions of supervised release. That's freestanding. If you don't have a job and not trying, that itself is enough to put somebody— Right, but my point is that the inference has been made, or the argument has been made, that failing to get a job is a willful failure to get a job, means you're trying not to have the money to pay restitution. But the point is, you don't need that. You don't need that second step. If you don't have a job, that's enough to violate supervised release. I understand. I'm saying that the failure to get a job can be construed as a willful failure to get the money to pay restitution. But my point is, that's just sort of early on. I think we're talking past each other. I don't think— The failure— My point is, if that's the whole purpose, you're concerned about that, that's not much of a concern, because if you don't have a job, that in and of itself is a violation that allows you to go back to jail, correct? For the supervised release violation, the willful failure to pay restitution allows you to get a sentence up to the maximum that you could have originally gotten, which is greater than the maximum supervised release revocation sentence. And so I'm saying that the inference can be made, that you would then have both. The other concern is just saying, well, you haven't paid, and we're concerned— Stop for a second. I'm sorry. Can you say that's happened? Has that happened in this circuit ever? I don't know, but— Let me say this. My experience was, and I'll just say again, ask the court to indulge me. I was very hard on restitution. People may not believe that I was hard on people on restitution, but I was. Nobody, honestly, nobody ever took restitution serious. You would order it, and then nothing would ever be done about it. I've never seen anybody ask for a revocation of supervised release for failing to pay restitution. I didn't know such an animal existed. Well, we have certainly seen that as additional violations that are brought in supervised release petitions, but even if ultimately at a hearing, a judge does not determine that it's a willful failure to pay, mere existence of the petition can trigger a warrant, can trigger incarceration while they're waiting for that, and the mere threat of that imprisonment is significant. Can I ask you one question? There's some value, I think, in having a statute like this, in particularly one that affects the operation of the armed services, to be uniform across the country. And there are several cases out there. The Kumar case in the Sixth Circuit and the Eleventh Circuit, Jones case. James. James. And I, after looking at those, thought, well, you know, if we go the way you want us to go, even apart from the merits, it would have the effect of creating a circuit conflict, or it seems to me, circuit tension. And I'm just, all other things being equal, I don't see you playing that language argument, but even if I did, I would think a little bit about putting us in opposition to these two other circuits. Well, I understand that concern, Your Honor, but I think that the issue simply wasn't before them. If there are no other questions now, I think I'd like to... I think it was before them, because they were charged with interpreting 88C3, which is what we're talking about today. And they seem to me to hold that those words, liable for all costs, were put in there to allow a district judge to impose liability in the course of a criminal proceeding for costs other than simply search costs, and that there was a purpose. That's why the word restitution wasn't used, and it seemed to me that it was meant, that the words all costs were meant to broaden a district court's ability to impose all costs. And I understood that to mean in the course of a criminal action. Well, we think the plain language doesn't say that clearly enough under what this court and the Due Process Clause require. And if I can reserve the rest of my time, thank you. Thank you. May it please the Court. Good morning, Your Honors. Kevin Hudson for the government. Your Honors, there actually are a few things that the parties agree on here. Both parties agree that the defendant is liable for the Coast Guard's costs under 14 U.S.C. 88C. They even agree on the amount. It was actually in the Statement of Facts that was offered in support of the guilty plea in the district court. I think that's at Joint Appendix 41. The question that remains, as the Court has pointed out, is whether that liability for the Coast Guard's costs can be criminal liability. Does the statute provide for criminal liability? And it most certainly does. Now, what I'm about to say next is different from the government's brief. I apologize to the Court, but I want to let the Court know that I did contact defense counsel and let them know that I would be saying this to the Court today. In reviewing their reply brief and in preparing for today's argument, it occurred to the government that it is possible that 88C.3, of course, provides for criminal liability, yes. Maybe it does also provide for an alternative civil liability. Don't know. Court doesn't necessarily need to answer that question. I wonder why you hadn't made that argument. Yes, ma'am. And it occurred to the government in preparing for today's argument that maybe, maybe, C.3 could also be civil. That wouldn't be exclusive of liability. It would not, sir. Yes, sir. That would follow the statutory language, because it doesn't say civil or criminal. Precisely, ma'am. And that is the government's point. So I apologize for the deviation from the brief. But on further review, I am convinced the most natural reading. Well, fortunately for you, the Court was ahead of you. Thank you, sir. Yes, sir. That appears to be true. The argument is simple, that the word liability, liable, is deliberately not confined. Indeed, sir. Yes, sir. It's a flexible term. As the Court pointed out, and as it appears the defense has conceded, the word can be used in both contexts. Judge Motz pointed out that one statute, 18 U.S.C., what was it? The rejoinder to that, of course, is that 18 U.S.C. is the criminal code. Well, that is true. It is the safeguard code. Yes, ma'am. This isn't the only provision like this in this safeguard code. I mean, they have another couple of provisions. Yes, ma'am. And indeed, and even more on point for our purposes today, as I think Judge Wilkinson kind of pointed out, we have got the James case from the Eleventh Circuit. We've got the Kumar case from the Sixth Circuit. And actually, if the Court looks on page 567 of the Kumar opinion, they list, the Kumar Court lists a long list of criminal cases where criminal liability for the cause has been imposed pursuant to 88C3 on the grounds defendant was liable. Read those cases as addressing the precise question. In other words, was the argument that's made here made there? Ma'am, perhaps they don't deal with the precise issue. It seems to me it wasn't. Before the Court. It's true, ma'am. They mostly deal with how much. Can you be liable for all costs? What's proper to include within the scope? It sort of assumes the answer to the question that's raised here. It does, though, though, I would point the Court to, in the Kumar opinion from the Sixth Circuit, I think the Kumar Court kind of alluded to this issue a little bit and commented on it. They acknowledged in that case that they perhaps weren't dealing with the provision that was restitution per se, but rather functioned in a manner akin to restitution. And then, after so noting, the Kumar Court goes on to affirm the award of restitution or criminal reimbursement, criminal liability, however one wants to refer to it. Congress doesn't necessarily have to use the word restitution. They're not so constrained. The Congress so often gets quite a rap in court proceedings, and we talk about how unclear and everything it is, and it may be here. I actually think this was kind of an ingenious statute. I mean, I actually think that Congress probably did a pretty good job in communicating what it was they wanted to communicate, which was that, look, we're fed up with these false distress either as jokes or pranks or, for more sinister purposes, which was to allow smuggling. And whatever it is, you know, we're going to hit them from all angles. We're going to hit them with a Class D felony. We're going to hit them with restitution and more than restitution, liability for all costs, even beyond the specific cost of the search. We're going to hit them with the possibility of a civil action, and they're going to be liable, and whether it's in a criminal proceeding or in a civil action, for not only the trouble that they've put the United States government to, but for the fact that what they were doing actually could have cost the Coast Guard not just resources, but lives. I mean, the stuff that they do, their rescue missions are not free from danger. And so this statute says to me, we're going to get you this way, we're going to get you that way, because we don't like this. Absolutely, sir. The government completely agrees. The government is basing, by the way, its reading. Has the government done a search of the number of cases like this that exist? I mean, that all may be well, but I've never heard of this kind of claim before. There don't seem to be many reported cases of people making these false alarms and getting these huge amounts of damage. Does this happen every day? It doesn't happen every day, though. I can let the court- Are you the chief in charge of those kind of claims in your district? No, ma'am. No, ma'am. I'm not. I'm the asset forfeiture person in my district. So you would know if there have been other claims like this, right? Well, I think the civil folks in the office would probably do that in the Eastern District of Virginia. Asset forfeiture is- Oh, that's revealing. Perhaps. I can let the court know this, because we talked a little bit about James and Kumar and some of those other cases, and they're all cases where courts have looked at criminal liability pursuant to 88C3. But the restitution-like order or whatever was imposed in the course of a criminal proceeding. Correct. Correct. Yes, sir. I mean, that's the critical thing, and it was upheld, was it not? It was, sir. It was, sir. And it was imposed not in a civil action. No, sir. It was imposed as part of the criminal proceeding. Now, there are two circuit cases out there. My only question is, are these so common? Is this just like one other 1983 claim? I mean, there are just a million of them. They're not that common. And of course, they're going to be more common in those jurisdictions that are- Do you know if they're common or not? Do you know that answer? Do I know if they're common or not? They have certainly occurred before recently. Do you know the answer to it? Just answer her. Are they common? Do you have lots of them? Yes or no? Or you don't know? We don't have lots. However, in the Newport News and Norfolk Divisions of the Eastern District of Virginia, they are, because we're by the water, a regular occurrence. They're not an everyday case. We don't go to the grand jury every term with one. Well, that's informative. Thank you. Yes, ma'am. Thank you. Let me make a note, too. When I talk about this statute, I didn't comment on Congress on this statute. I was commenting on trying to read this statute in light of the matrix of other things Congress has done. And so to look at a general restitution statute and say Congress must submit this statute, this is a pretty broadly written statute. And I think it might well authorize everything you're seeking. But that was my point. I think you can find a statute like this. And my point was we need to be a little bit leery of looking at a statute that is written, perhaps broadly, and somehow trying to minimize it based on another statute that was passed at another time. Although we walked through that. But I think this statute is pretty broad. Yes, sir. And the government agrees. And that's, again, why the government has come in today, again, with apologies for deviating from its brief. But certainly 88C3 imposes criminal liability. And I think it probably could impose civil liability. What do you make of this concern about the potential criminal impact? And therefore, it should be read slightly different. You know, the criminal aspects and ramifications of not paying this ordered restitution. Yes, sir. So for that, I can tell the court the reality is no one goes to jail for inability to pay. And no one, there was some mention that, you know, someone would be brought in on a warrant and subjected to incarceration. I can't imagine someone getting detained, getting a no bond based on simple inability to pay. And again, the reality is no one goes to jail based on simple inability to pay. Actually, I think the argument was a little bit more subtle than that. What he said was that if you don't, haven't found a job, and you say, and you're not able to pay, then the violation is that you haven't found a job. But it's because you, and you haven't been able to pay this. Sort of the two went together. Yes. But I think I understand your position.  Thank you, ma'am. One of the things I did want to touch on, we've been talking about these cases where criminal liability was imposed pursuant to 88C3. And I will point the court to the fact that the defendant has cited no cases whatsoever where 88C3 functioning as restitution has ever even been questioned by a court, as this several courts, time and time and again. So I want to emphasize to the court that the defendant's argument is swimming against the legal current here. In terms of practice. In terms of practice, yes, sir. But again, I would point the- Custom and practice. Custom and practice. But also in the Kumar case, sir, I do think, like I said a moment ago, that the Kumar court, this issue didn't just totally go by the Kumar court. Right now, we have your briefs, and we have the amendation to your brief expressed here in oral argument. I'm going to ask my co-panelists if they have further questions of you. Judge Watts? No. Judge Sheehan?  Thank you. Thank you, sir. Apologies. Mr. Bryant, you deserve some time for rebuttal, sir. Thank you. I'll be very brief, Your Honor. The first thing I want to address is the court is, we talked about giving Congress a bad rap or trying to maybe flyspeck congressional practice. But the fact is that when Congress passed the MVRA, it went through the code and found particular other provisions, specific sections of the code. And I don't think it's too much to ask to say they knew what they were doing. They had the ability to say- I think, Judge, the argument to the contrary was mentioned by my good colleague, Judge Our job really primarily is not to analogize this statute to this statute and this statute to the whole universe of statutes. Our job is to look at the statute before us. And as he pointed out, Congress was dealing with a specific problem, and it chose broad language to deal with that very problem. And so analogies, they're interesting and they're helpful. And not surprisingly, the business of lawmaking contains some lumps and inconsistencies. But at the end of the day, when it's all over, you just have to say, here was the problem. Here was Congress's response to it. It was emphatic. It was broad. And as interpreters of law, we know what the heck they were trying to do. Well, I think if that's the case, then it's surprising that nowhere in the legislative history was the word restitution used. But there are reasons for that. Well, but it seems like if that's what Congress intended, they should have done a better job. In a broader term, to express their purpose, the restitution was too narrow. So they wanted to say liable for all costs. They didn't want arguments that this wasn't purely restitutionary and therefore couldn't be imposed. So there's a perfect reason for what it was doing. Well, we're not trying to deny the Coast Guard that ability to recover all costs. We're simply saying, and ultimately— You didn't want them to spend a lot of money in order to do that. And, as Judge Mott said, to spend a lot of time. I don't think that's a considerable imposition, certainly compared to the interest on the other side. And finally, the last thing I'll say is— Let me ask you this. In this Coast Guard case, do you feel cast adrift? I sometimes feel a bit at sea, Your Honor, maybe seasick. But our ultimate position is that the text isn't clear and there is an ambiguity. And if nothing else, because this is a criminal provision, a criminal penalty, that the rule of lenity would require an interpretation in our favor. And with that, we'll ask you to reverse and vacate this restitution order. Thank you. Thank you. We'll come down to Greek Council and take a brief recess. This Court will take a brief recess. Thank you.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Dennis W. Shedd